IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 1 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

DAVID L. HAGER,                    §
                                   §
          Plaintiff,               §
                                   §
VS.                                §    NO. 4:16-CV-142-A
                                   §
DBG PARTNERS, INC.,                §
                                   §
          Defendant.               §

MEMORANDUM OPINION
and
ORDER

I.

Current Posture of the Case

On January 28, 2019, the court conducted a bench trial on
the issues the Fifth Circuit expected to be resolved when it
reversed certain rulings made by this court on August 28, 2017,
and remanded the action to this court, Hager v. DBG Partners,
Inc., 903 F.3d 460, 471 (5th Cir. 2018). Those issues are
(1) whether plaintiff, David L. Hager ("Hager"), should receive
statutory penalties from defendant, DBG Partners, Inc., by reason
of defendant's alleged failure to notify Hager of termination of
the healthcare plan carried by defendant for its employees, and,
if so, the nature and extent of such penalties, id. at 470-71,
(2) whether, in fact, defendant failed to notify Hager of such
termination, (3) whether Hager should recover attorney's fees
from defendant, as Hager has requested in his complaint, and, if

so, the amount, id. at 471, and (4) whether Hager should recover from defendant costs of court incurred in this action, id.

The Fifth Circuit affirmed this court's judgment of dismissal as to all claims pleaded by Hager other than his claims for recovery of attorney's fees and costs of court.[1] It upheld this court's denial of Hager's claim for compensatory damages for violations of COBRA notice requirements. Id. at 469-70.[2] Because Hager acknowledged before this court that he had received notice of his right to continue his healthcare coverage under COBRA, and failed to explain on appeal why that notice was inadequate, the Fifth Circuit considered that issue forfeited. Id. at 466-67. Thus, this court's dismissal of that pleaded claim was upheld. Similarly, the Fifth Circuit upheld this court's dismissal of Hager's pleaded claim of fraudulent conversion of insurance premium payments he had provided to defendant with the intent that defendant would forward the

---

[1]Hager did not plead that he was entitled to a penalty, as discussed infra at 12.

[2]While the Fifth Circuit concluded that 29 U.S.C. § 1132(a)(3) did not authorize recovery of compensatory damages for failure to comply with notice requirements, Hager v. DBG Partners, Inc., 903 F.3d 460, 469-70 (5th Cir. 2018), it concluded that § 1132(a)(1)(A) allows a plan participant to bring a civil action described in § 1132(c) for an award of a discretionary penalty against an administrator that does not comply with the COBRA notice requirements of 29 U.S.C. § 1166(a)(4), on which 29 C.F.R. § 2955.606-4 elaborates, id. at 470. Because of its conclusion that "Hager maintained in the district court that he was entitled to such a penalty," id., the Fifth Circuit held that this court abused its discretion when it ruled that Hager was legally barred from obtaining a penalty award. The Fifth Circuit said "[w]e can discern no barrier to the court awarding the amount of Hager's medical expenses as a penalty." Id. at 471.

payments on to the health insurance carrier providing Hager COBRA coverage. Id. at 464.

As the Fifth Circuit held, Hager adequately alleged that defendant did not fulfill its notice obligations under COBRA. See Doc. 1 at 7, ¶ 23 & at 8, ¶ 25 (there are two paragraphs 25 on pages 7-8 of the complaint).[3] However, the court has a concern with the Fifth Circuit's statement, having reference to a penalty based on a failure, if any, of defendant to notify him of termination of its health plan for its employees that had the effect of terminating Hager's COBRA insurance coverage, that "Hager maintained in the district court that he was entitled to such a penalty." Hager, 903 F.3d at 470. While the record of this court substantiates that Hager attempted to inject that issue into the case before this court dismissed all his COBRA claims, an overall view of the record discloses that there is no way this court reasonably could have known when it dismissed all of Hager's claims that he was actually making such a claim.

The court does not intend by anything stated in this opinion to be critical of the handling by the Fifth Circuit of Hager's appeal from this court's dismissal order. The opinion of the Fifth Circuit discloses that the Fifth Circuit conscientiously

_____

[3]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:16-CV-142-A.

studied the record before it and applicable legal authorities, and made certain rulings in favor of defendant based on the contents of the record and those legal authorities even though defendant was unrepresented on the appeal and did not provide the Fifth Circuit any assistance in evaluating accuracy or completeness of the appellate record, nor did the Fifth Circuit have the benefit of a defense counsel's assistance in bringing to the Fifth Circuit's attention inferences beneficial to defendant that might be drawn from the contents of the incomplete record that had been provided to the Fifth Circuit for its consideration in deciding the appeal.

As the Fifth Circuit noted in its opinion, defendant failed to file a brief on appeal. Consequently, the Fifth Circuit was without any assistance in evaluating the integrity, from the standpoint of the presentation of Hager's claims before this court, of contentions Hager made before the Fifth Circuit. That was a subject of an exchange between this court and defendant's counsel at the January 2019 bench trial, that went as follows:

> *THE COURT:* Well, one of the problems I think that developed in this case, Mr. Richerson, is your client was not represented in the Fifth Circuit. No brief was filed on behalf of DBG, and no lawyer appeared on behalf of DBG, so the plaintiff had a free run to tell the Fifth Circuit anything they wanted to tell the Fifth Circuit, and they didn't have anybody answering that.

> Why did you not represent DBG in the Fifth
> Circuit?
>
> *MR. RICHERSON:* Well, Your Honor, that had nothing
> to do with DBG. I was actually sick. I closed my
> practice.
>
> *THE COURT:* You were what?
>
> *MR. RICHERSON:* I was sick and I closed my
> practice, and I reopened it and I closed it again, and
> during the time when my brief was due, it was basically
> I was closing the practice and I just couldn't do it,
> and that was really the only reason why.
>
> I didn't want the client to suffer for it, but
> that was the truth, and it was unexpected. Only two or
> three cases were affected, but that was the absolute
> reason. I just couldn't do it physically.

Doc. 120 at 190.

One of the adverse effects of the non-representation of

defendant in the appeal was noted by the Fifth Circuit in its

opinion when it discussed an August 16 meeting for a settlement

conference, which was followed by a proceeding in the courtroom.

Hager, 903 F.3d at 464. The Fifth Circuit noted in its opinion

that "[a]fter the conference, the parties reported to the

courtroom; the proceeding that followed is not in the record."

Id. (emphasis added). This court has discovered that three

district court proceedings had not been transcribed and put of

record prior to Hager's appeal to the Fifth Circuit, with the

consequence that the Fifth Circuit did not have a complete record

of the proceedings of this court. Those transcripts have been

5

prepared, are now of record, and appear as Docs. 79, 80, and 81 on this court's docket in this action. If defendant had been properly represented on the appeal, those absences from the appellate record undoubtedly would have been called to the Fifth Circuit's attention inasmuch as information important to the defense was contained in two of those transcripts. Particularly pertinent were exchanges between the court and counsel for Hager that are found in the transcript the Fifth Circuit referred to when it said "the proceeding that followed is not in the record." Hager, 903 F.3d at 464. During that proceeding, the court and counsel for Hager had the following exchange that defined the issues that were before this court for decision:

> THE COURT: Let's see. As I recall, we're down to the back end, that is, whether your client got proper notice of termination of the coverage of the group policy?

> MR. O'KELLY: Correct, Your Honor.

> THE COURT: And then if he did get notice -- if he didn't get notice, did they make a reasonable effort to give him notice. That would be an issue.

> MR. O'KELLY: That would be the issue, yes, Your Honor.

> THE COURT: And then even if they didn't give him notice, does he have any right to recover damages because of that.

> MR. O'KELLY: We have made --

> THE COURT: Is that kind of where we are?

> MR. O'KELLY: You're right, Your Honor. I won't
> respond, but you're right. You've identified the issues
> correctly, Your Honor.

Doc. 80 at 4-5 (emphasis added). This court's order of dismissal
was, according to the Fifth Circuit's rulings, correct as to the
third issue. Because of this court's decision on the third
issue, it had no reason to decide the first two; however, the
court has now found, based on the record as it now exists, that
defendant in good faith tried to give Hager notice.[4]

The exchange quoted above occurred on August 16, 2017, the
last occasion for the parties to be before the court prior to the
August 21, 2017 proceeding that led to the court's announcement
that the case was being dismissed. That exchange was consistent
with the following reasons that were stated on the record at the
time the dismissal was announced when the parties were before the
court on August 21, 2017:

> THE COURT: I'm telling you now that I'm satisfied
> that your client does not have any right to recover
> compensatory damages based on any alleged failure of
> the defendant to notify your client that the policy had
> been terminated.
>
> Is that what you want a record of?

_____

[4] On August 28, 2017, the court issued an order explaining and accomplishing the court's final
dismissal judgment. Doc. 69. In that order, the court explained that the court was rejecting Hager's
claim for lack of notice of termination of the health insurance coverage because Hager had no right to
recover damages from defendant for any loss he might have sustained because of the lack of notice, id. at
18, which was consistent with the holding of the Fifth Circuit that even if defendant had failed to give
notice of termination of the insurance coverage, it would not be liable to Hager for compensatory
damages, Hager, 903 F.3d at 469-70.

> *MR. O'KELLY:* Well, if that's your finding, then I need a record of that so I have something to --
>
> *THE COURT:* Okay. That's what my finding is.
>
> That hearing we had on August 8th of this year clearly reflects what happened to the part of the claim that had to do with failure to give him notice of his entitlement to COBRA coverage. That's behind us.
>
> And I'm telling you now that there's no point in going to trial on the other one, that is, the alleged failure to give proper notice of termination of the plan. That's not going to get you any money, and there's not much point in going to trial if you're not going to win, if I don't have anything for the jury to decide.

Doc. 74 at 28-29.

Of similar importance is information contained in the transcript that is now of record as Doc. 81, which is a transcript of a pretrial conference that was conducted in this action on July 3, 2017. Even though Hager had been ordered to put in the joint pretrial order the parties to were to submit to the court "a full and complete statement of plaintiff's claims, with specificity," doc. 19, attach. Special Pretrial Instructions at 1, ¶ 4(c), the joint pretrial order the parties presented to the court in advance of the July 3, 2017 pretrial conference said nothing about any claim by Hager for recovery of

any penalties; rather, the only description of any claims Hager

had under COBRA was stated by Hager as follows:

> 1.   Violation of 29 U.S.C. §1161 1166 (COBRA) as
> follows:
>
> a.   Failing to provide Plaintiff with timely
> notifications of his right to elect COBRA coverage
> within 30 days of Plaintiff's termination of
> employment;
>
> b.   Failing to notify Plaintiff or any covered
> employee of cancellation of Plaintiff's health
> insurance coverage at the time of termination of
> coverage;
>
> c.   Failing to notify or otherwise keep Plaintiff
> properly informed of his COBRA coverage under
> Defendant's group medical insurance plan.

Doc. 78, Ex. A at 2.

The court pointed out to Hager's counsel at the pretrial

conference the inadequacy of the pretrial order.  Doc. 81 at 2,

4-5, 15-16.  His counsel explained to the court what Hager

expected to recover based on the failure of defendant to notify

him of termination of his COBRA coverage, saying:

> MR. O'KELLY: Well, under Cobra, if my client is
> not getting coverage and incurs medical bills that
> should have been covered but for the omissions of the
> employer or the plan administrator, then the law is
> pretty clear that he gets, not only his premiums, but,
> also, the medical expenses he's incurred.

Doc. 81 at 15.  No mention was made of a claim for penalties.

The court ordered at the pretrial conference that the

parties prepare and file a revised joint pretrial order, and

directed that it "will have a detailed listing of plaintiff's claims where the Court can read that and understand what plaintiff's claims are." Id. at 21-22.

The revised joint pretrial order (titled "Amended Joint Pre-Trial Order") that the parties provided to the court in response to that directive described Hager's claims in some detail. Doc. 78, Ex. B at 2-4, § 4, ¶¶ 1-16. Hager's only claims pertaining to liability by defendant to Hager for violations of COBRA were stated as follows:

> 15. Defendant is liable for Plaintiff's medical expenses incurred between June 1, 2015 and July 31, 2015.

> 16. Defendant is also liable for Plaintiff's attorneys fees and costs that Plaintiff has incurred in the pursuit of this action.

Id. at 3-4, ¶¶ 15-16. Not once did Hager mention in his description of his claims that he was seeking penalties from defendant based on any set of facts or circumstances. No mention was made of penalties in any other section of the amended pretrial order.

Nor was the Fifth Circuit provided for its consideration of Hager's appeal copies of either the original or the first amended proposed pretrial orders that failed to mention any claim for penalties. Doc. 78, Exs. A & B. They were not in the case file when the case was dismissed.

10

If defendant had been represented by an attorney in the appeal to the Fifth Circuit, the attorney undoubtedly would have called the foregoing matters to the attention of the Fifth Circuit, which could well have caused the Fifth Circuit to conclude that it did not have a complete record on appeal, and to require Hager to produce transcripts of the proceedings and to cause them to become parts of the appellate record. Once the Fifth Circuit had the complete record, it might well have concluded, with the help of defense counsel if there had been one, that Hager had not sufficiently informed this court that Hager was making a claim for penalties based on defendant's failure to notify Hager that it was terminating its health insurance plan. If the Fifth Circuit had reached such a conclusion, it could have affirmed this court's dismissal.[5]

---

[5]See DeVoss v. Sw. Airlines, Co., 903 F.3d 487, 489 n.1 (5th Cir. 2018)(declining to address a claim because the plaintiff had failed "to provide any structured argument supporting" the claim in the district court or on appeal); Firefighters' Ret. Sys. v. Grant Thornton, LLP, 894 F.3d 665, 670 n.18 (5th Cir. 2018)("an argument not raised before the district court cannot be asserted the first time on appeal"); Burciaga v. Deutsche Bank Nat'l Trust Co., 871 F.3d 380, 389 (5th Cir. 2017)(stating "[a] party must press and not merely intimate the argument during the proceedings before the district court"); Maverick Recording Co. v. Harper, 598 F.3d 193, 197 (5th Cir. 2010)(a party "waived her constitutional challenge by failing to raise it [in the district court] in a manner that would allow the district court to rule on it"); Int'l Women's Day March Planning Comm. v. City of San Antonio, 619 F.3d 346, 356 (5th Cir. 2010)("If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court"); Kelly v. Foti, 77 F.3d 819, 823 (5th Cir. 1996)(holding that an issue is not preserved if it was not fairly presented to the district court and that the "raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised").

If defendant had been properly represented by counsel on appeal, its counsel would have called to the Fifth Circuit's attention the same things this court called to the attention of the parties by the order this court issued on November 20, 2018, for the purpose of explaining to the parties in advance of a proposed hearing that the court was unaware when the court dismissed all of Hager's claims that Hager was making a claim for penalties based on the alleged failure of defendant to notify Hager of termination of the health insurance plan. <u>See</u> Doc. 86. The sequential discussion of pertinent events in this action that are provided this court's November 20, 2018 order, as the action pended in the district court before the court's August 2017 dismissal, demonstrates without any serious question that this court had no reason to be aware at the time of the court's August 2017 order of dismissal that Hager was asserting a claim for penalties based on a failure of defendant to notify Hager of termination of the health insurance plan.

Hager made no such claim in the complaint by which he initiated this action in February 2016. Doc. 86 at 3-4. And, there is persuasive basis for a contention that such a claim would constitute a claim for Special Damages, as contemplated by Rule 9(g) of the Federal Rules of Civil Procedure, which provides

that "[i]f an item of Special Damage is claimed, it must be specifically stated." See Doc. 86 at 15.

Rather than to reiterate what the court put in the November 20, 2018 order on the subject of the unique circumstances in this action that caused the court not to have knowledge when the court dismissed all of Hager's COBRA claims that Hager was making a claim of entitlement to penalties based on defendant's alleged failure to notify him of termination of the health plan, the court is inviting the reader of this opinion to refer to and read the text under the heading "Unique Circumstances in This Action" at pages 18-29 of the November 20, 2018 order. Doc. 86 at 18-29. Near the end of the November 20, 2018 order, the court explained, and directed, as follows:

> This court agrees with the statement by the Fifth Circuit that "Hager maintained in the district court that he was entitled to such a penalty." Supra at 1-2. However, the techniques used by plaintiff to maintain that he had such an entitlement were so tenuous that this court did not consider, or realize, that such an issue was actually before this court for decision.

> The court tentatively has concluded that those techniques were such that they could form the basis for a denial by the court of any penalties and attorneys' fees, bearing in mind that a plaintiff has an obligation to make known to the court in an appropriate manner the claims on which he is asking the court to make a ruling.

> However, the court is directing plaintiff to respond to the contents of this order if he disagrees with, or wishes to comment on, any of the facts

13

recited, or conclusions expressed, by the court in the order.

Id. at 29-30.

Hager did respond on December 30, 2018. Doc. 96. In that response, Hager was critical of the court for preparing and issuing the November 20, 2018 order; and he disagreed with this court's conclusions. However, he did not call the court's attention in his response to any specific factual statement in the order with which he disagreed. Instead, he chose to use the court's issuance of the November 20 order as a basis for a motion for recusal under 28 U.S.C. § 455(a), in which he attacked this court for its preparation and issuance of the order. Doc. 97. The motion for recusal was filed shortly before the first setting of the post-appeal trial of this action. The court rescheduled the trial to give it an opportunity to fully consider and rule on the motion, doc. 99, which the court denied by order issued January 11, 2019, doc. 102.

At the January 28, 2019 trial, the court gave Hager's attorney an opportunity while he was testifying to put of record any complaint he had relative to accuracy of the things this

court said in the November 20, 2018 order.  Doc. 120 at 186-87.
The following exchange occurred:

> *THE COURT:* . . . .
>
> Well, is there anything in the order I issued on November 20, 2018 that I did not accurately describe what happened in that order?
>
> *MR. O'KELLY:* I don't believe so. I don't have the order in front of me, I have not read it recently, but I don't believe you have mischaracterized anything, except the suggestion that I had failed to preserve the issue of penalties, which I thought I had done by asking for general relief in the original complaint and then proceeding with the amendment to the joint pretrial order so that that was preserved. That's -- that's what I did.

Id. at 186.

The court anticipated, and dealt with, in the November 20, 2018 order the contention that the request in Hager's complaint for "general relief" was sufficient to alert the court that he was seeking penalties under COBRA.  Doc. 86 at 15-18; see also supra at 12-13.

Of interest is the testimony counsel for Hager gave at the January 28, 2019 trial concerning the events that led to the inclusion in the second amended pretrial order of the mention by Hager of a legal issue of penalties related to the alleged failure of defendant to provide Hager notice of termination of the health insurance.  The court's description of those and related events is found at pages 7-11 of the November 20, 2018

order. Doc. 86 at 7-11, ¶¶ 5-7. As the court inferred from the information the court had available at the time of that order, the inclusion of the penalty language in the second amended pretrial order came about through violations by Hager's counsel of a court order. Id. at 10-11. Hager's attorney confirmed during his testimony on January 28, 2019, the inferences the court expressed in the November 20, 2018 order. Doc. 120 at 178-86. Hager's counsel acknowledged by his testimony that he was aware that the court had issued an order in response to his motion for leave to add penalty language to the pretrial order informing the parties that the language could be added if the parties reached an agreement on that subject, but if they could not reach an agreement, then Hager could reurge his motion for leave. Id. at 181. He admitted that he put the penalty language in the second amended pretrial order without conferring with defendant's counsel because he was "trying to protect [his] client to make sure [he] preserved all issues." Id. at 182. He recognized that he had sought leave of court to put that in the pretrial order, and said that he thought he had received leave of court to do so. Id. at 182-183. The fact is that he had not received leave. In the course of the questioning, counsel again explained his conduct by saying that "I was trying to preserve the issues for the plaintiff." Id. at 183-186. Needless to say,

16

if, as Hager has contended, a general prayer for relief in Hager's complaint had done the job, his attorney did not, in violation of an order, have to sneak the claim into the wording of a pretrial order to preserve it.

The mention of penalties by Hager's counsel in the second amended pretrial order could well be what caused the Fifth Circuit to say in its opinion that "Hager maintained in the district court that he was entitled to such a penalty." Hager, 903 F.3d at 470. Had defendant been properly represented before the Fifth Circuit on the appeal, defense counsel could have informed the Court of the irregularities that resulted in the inclusion of the penalty language in the second amended pretrial order, and the Fifth Circuit panel presiding over the case could have taken that into account in its evaluation as to whether Hager properly advised the district court of the existence of his claim for penalties before the order of dismissal was issued.

Notwithstanding this court's belief that any claim by Hager for penalties related to the alleged failure by defendant to give Hager notice of termination of the health plan was not brought to this court's attention sufficiently for this court to be aware of it when this court dismissed Hager's COBRA claims, this court understands and respects that the Fifth Circuit, by its reversal and remand, has indicated its disagreement with this court's view

of that matter, with the result that this court accepts, as it must, the decisions of the Fifth Circuit on that subject. However, the court notes that the Fifth Circuit gave this court discretion in deciding whether to award Hager penalties or attorney's fees, and, if it did, the amount to be awarded as to each. And, this court is taking into account all the information contained in this court's November 20, 2018 order and points made in this opinion in making those decisions.

II.

## The Notice of Termination Issue

The court now turns to the claim by defendant that it sent a letter to Hager, notifying him that defendant would be ending the Blue Cross health plan as of June 1, 2015, would no longer be providing health benefits to its employees, and that Hager's COBRA benefits could be affected. Pl.'s Ex. 8; Def.'s Ex. 9. That letter is the only thing on which defendant relied as constituting notification to Hager that the continued insurance coverage he obtained through COBRA was being terminated. Defendant placed reliance on that letter in its post-hearing memorandum filed in this court as providing appropriate notification to Hager of his health insurance coverage. Doc. 122 at 2-4. Defendant did not provide any explanation as to why there are two versions of the letter, one showing a date of

May 12, 2015, Pl.'s Ex. 8, and the other showing a date of May 5, 2015. Def.'s Ex. 9.

While there is evidence that the person who ran defendant's business thought the letter was mailed, doc. 80 at 24-25, there was no direct evidence that the letter was actually put in the United States mail for delivery to Hager. The letter was addressed to Hager's address shown on the information sheet on the inside of the front cover of Hager's personnel file, which Hager had the obligation to maintain as CFO of defendant. Def.'s Ex. 18. In May 2015, Hager no longer lived at that address, but lived at an address used in an earlier letter that defendant's attorneys had prepared for defendant's CEO to sign relative to the termination of Hager's employment. Doc. 120 at 155-56; Pl.'s Ex. 7. Hager denied that he received the May 12, 2015 version of the letter on the date shown on the letter.[6] Doc. 120 at 22. He was not asked about the May 5, 2015 version of the letter, but he did say that he did not receive during May, June, or July 2015 any notice from defendant that the insurance plan was to be, or had been, terminated. Id. at 29.

---

[6]The pertinent questions and rather unusual answer were as follows:
> Q. Exhibit 8, do you see it?
> A. Yes.
> Q. Okay. And did you ever receive this letter on May 12, 2015?
> A. No, sir.

Doc. 120 at 22:16-20.

A version of the letter that purports to be from defendant to Hager concerning termination of the health insurance coverage apparently is what the Fifth Circuit had in mind when it expressed the conclusion that, "alone, DBG's letter is insufficient to support dismissal of Hager's claim." Hager, 903 F.3d at 468. Defendant's arguments to the contrary in its post-hearing memorandum are not persuasive. The court concludes that, while the record contains evidence of defendant's good-faith intent to inform Hager of its plan to terminate the health insurance coverage, the court is not persuaded by defendant's arguments that the termination-of-coverage letter is sufficient to establish that Hager received notice that the health insurance coverage was to be terminated. Indeed, the Fifth Circuit held that because of defendant's failure to file a brief, defendant forfeited its contention that it had fulfilled its notice obligations. Id. at 467.

### III.

### Defendant Acted in Good Faith

The Fifth Circuit said in its opinion that Hager had pointed to evidence suggesting that defendant did not act in good faith

on the matter of providing notice, and defined that evidence as follows:

> (1) DBG sent Hager's employment termination notice, which was hand-delivered earlier than the health plan termination notice, to the correct address; (2) Hager exchanged text messages with Rowan about health insurance, during which Rowan failed to mention the plan's discontinuation; and (3) DBG deposited Hager's premiums when it received them, and refused to refund them for almost two years.

Id. at 468.

The court is persuaded by the evidence now in the record that the evidence does not establish that defendant did not act in good faith on the notice requirement. Rather, it shows that defendant acted in good faith. Doc. 80 at 24-25; Doc. 120 at 157-58, 162-64.

The only text exchange this court has found in the record shows that, by the time that exchange occurred, Hager already knew that the healthcare insurance coverage had been terminated. Pl.'s Ex. 1; Doc. 120 at 29-30.

The witness who testified on the subject of the giving of notice by defendant to Hager of termination of the health insurance was Todd Rowan ("Rowan"), who is the responsible person at defendant, with the consequence that his motive and intent becomes the motive and intent of defendant. Doc. 120 at 30:1-4; 152-53.

He explained that the address used in the termination-of-employment letter was different from the address used in the notice-of-termination-of-insurance letters because the former was prepared by an outside law firm[7] while the latter letters were probably prepared by Derrick Moore, the Chief Financial Officer for defendant who replaced Hager in that job. Doc. 120 at 158:1-5. The letter was found on Derrick Moore's computer. Id. at 163-164. Rowan believed that the latter letter was mailed to Hager by defendant's then-CFO. Id. at 158, 164:6-10. The address used on the letter was the only address shown for Hager inside his personnel file. Doc. 80 at 24-25; Doc. 120 at 162-63; Def.'s Ex. 18. So far as Rowan knows, the letter was not returned to defendant by the Postal Service. Doc. 120 at 162:1-4. Rowan did not provide a copy of the letter to the attorneys who had prepared the termination-of-employment letter. Id. at 158-59. He testified that, while he is no expert on Blue Cross, they sent out the notice as soon as they knew they were going to terminate the plan.[8] Id. at 159:16-18.

---

[7] The letter shows that it went "Via Hand Delivery." Pl.'s Ex. 7. However, there is nothing in the record to suggest that defendant's CEO, Rowan, had any part in the hand-delivery. More logically, it was hand-delivered by the law firm which was responsible for preparation of the letter and causing it to be signed by Rowan.

[8] The termination-of-insurance letter does not, as Hager contends in his post-hearing memorandum, doc. 121 at 4, say that defendant is terminating Hager's COBRA coverage. Rather, it says that defendant will be "ending its Blue Cross health plan" and "will no longer be providing health
(continued...)

As to the premium payments, Rowan's impression is that the premium payments Hager sent to defendant after May 12, 2015, were forwarded by defendant, presumably by its checks, to Blue Cross. Id. at 159:19-24 & at 160:1-8. Though there was a period of time before his premium payments were returned to Hager, defendant had been trying to retrieve the funds from Blue Cross on behalf of Hager for some period of time. Id. at 160:14-21 & at 168:3-22.

Hager's personnel file with defendant has under an ACCO fastener inside the front cover a form containing information pertaining to Hager, which shows his address to be the Whittier Lane address to which the notice-of-termination-of-insurance letters were addressed. Def.'s Ex. 18 (inside front cover). Hager's employment application form, which is under Tab 2 of that same file, shows the same address. Id. at Tab 2. Also, an item under Tab 4 shows his address to be on Whittier Lane. Id. at Tab 4. There is nothing in the personnel file that shows a change of address for Hager. Id.

Hager testified that he had inserted a form in his personnel file that showed his change of address. Doc. 120 at 117-18. He was shown his personnel file, he looked through it, and said that

---

[8](...continued)

benefits to its employees" and that doing so "may affect your COBRA benefits please check with your health plan provider for options regarding health benefits." Pl.'s Ex. 8 & Def.'s Ex. 9.

he could not locate in the file the change-of-address form he said he put in it. Id. at 118-19, 125.

Hager explained the handwritten entries on the contents pages in the front of the personnel file--the top pages under the ACCO fastener in the back cover of the file. The handwriting with the initials "DH" is his handwriting. Doc. 120 at 128. The dates shown by his handwriting are either the date that the particular document was put in the file or a date when he reviewed the file to make sure that it was there. Id. The change-of-address form would have been put under the "Miscellaneous" tab [Tab 20] of the personnel file.[9] Id. at 128-29. If he had added something into the "Miscellaneous" part of the file, he should have initialed the "Miscellaneous" line in the contents section to indicate that he had done so. Id. There are no initials or other entry on that line. Def.'s Ex. 18 at 2d page under ACCO fastener in back cover. The entries in green are his. Id. at 129. At the time of his change of address, he no longer had an assistant, so he was doing all of the entries by himself. Id.

_____

[9]Hager's testimony that he put the change-of-address form under the "Miscellaneous" tab is itself incredible. The most-logical place for it to be put would be under the ACCO fastener in the front cover of the file where personal information about Hager, including his home address, is found. The next most-logical place to put such a form would be under Tab 10, which identifies its contents as "Employee Information Form (including emergency contact information, allergies, any special conditions or needs)." Def.'s Ex. 18 (top page under ACCO fastener in back cover of exhibit).

All of the entries on the contents part of his personnel file that were made by Hager have entry dates in October 2013. Ex. 18, top 4 pp. on the right side of the file, above Tab 1.

Hager's own testimony establishes that his claim that he put a form in the file showing he had a change of address has a credibility problem. He earlier had testified that the last time he resided at the Whittier Lane address, to which the termination-of-insurance letters were addressed, was February 28, 2014, doc. 120 at 23:7-8, and that on March 1, 2014, he completed the change-of-address form that any employee would complete when they have a change of address, to show he had a new address, id. at 23:4-25 & at 24:1-6.

Thus, the evidentiary record indicates that if the termination-of-insurance letter was sent to the address shown for Hager in his personnel file as of May 2015, it would have been sent to Hager's former home address, 6812 Whittier Lane, Colleyville, Texas 76034, which is the address to which the letter was directed. The court has reached that conclusion because of the absence of credible evidence that there was a change in the address for Hager noted in his personnel file at any time between the date when the file was created with the Whittier Lane address shown as his home address and the date when the termination-of-insurance letters were prepared for mailing.

The court finds that the evidence does not establish that defendant did not act in good faith. The court finds that Rowan's testimony is credible. The court infers from Rowan's testimony that he reasonably assumed that Hager's personnel file would accurately reflect Hager's mailing address, and that Hager's replacement as CFO proceeded on the same assumption when he prepared the termination-of-insurance letter to be mailed to Hager at the address shown in the personnel file. The court finds that Hager is incorrect in his contention that he caused there to be a change of his home address in the personnel file before the summer of 2015.

The testimony of Rowan leads the court to infer that Rowan assumed, if he did not have personal knowledge, that the termination-of-insurance letter was actually put in the mail to Hager, that it was correctly addressed, and that the mailing was successful because, so far as Rowan knew, the letter was not returned. The court finds that the delay on the part of defendant in returning Hager's June and July health insurance payments was not inappropriate considering that defendant was in the process of trying to receive a return of the funds from the insurer before reimbursing Hager. The court finds that while Rowan could see Hager's new address on the termination-of-employment notice defendant's attorneys prepared for Rowan to

sign for delivery to Hager, Rowan had no reason to believe that the correct mailing address would not be used in the termination-of-insurance letter that defendant's new CFO would be preparing for mailing to Hager.

There is no reliable evidence that defendant did anything that was intended to prevent Hager from having knowledge in May 2015 that the health insurance plan was to be terminated; rather, the court is persuaded by the evidence that defendant made a good-faith effort to inform Hager in May 2015 that the health insurance was to be terminated. However, the court is not using the findings made by the court in this paragraph as the only reason for denying Hager recovery of penalties or attorney's fees, but the court is taking such findings into account, along with other factors, in the rulings the court is making on those subjects.

IV.

### There Is No Valid Reason to Punish Defendant

The court has taken into account the Fifth Circuit's explanations that the statutory penalties contemplated by COBRA are "meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." Hager, 903 F.3d at 471. The court finds that defendant did not engage in any conduct related to its

27

obligation to notify Hager of the termination of the health insurance plan that would justify receipt by defendant of punishment even if, in fact, Hager did not receive notice of the defendant's intent to terminate the insurance plan. Therefore, the court is not awarding Hager any amount as a penalty related to the notification of termination-of-insurance issue.

V.

Further Factors That Have Entered Into the Court's<br>Decision to Deny an Award of Penalties

A. Failure of Hager to Properly Inform the Court Before the COBRA Claims Were Dismissed That He Was Making the Penalty Claim He Now Asserts

If it were a close question, and the court does not consider that it is, the court would be influenced to rule as it is on the penalty issue by the technique Hager and his counsel used in putting of record whatever the Fifth Circuit had in mind when it said in its opinion that "Hager maintained in the district court that he was entitled to such a penalty." Hager, 903 F.3d at 470.

Although Hager did put of record that he was entitled to a penalty because of his alleged failure to receive notice from defendant that it had terminated the insurance plan, the method by which he had done so, as explained in some detail in this court's November 20, 2018 order, doc. 86, was so tenuous that this court did not understand when it dismissed Hager's COBRA

28

claims that the dismissal included a claim for penalties based Hager's allegation that defendant did not properly inform Hager that it was terminating the health insurance plan.[10]  If the court had been aware that such a claim had been injected into the case by Hager, the court probably would have nevertheless dismissed the claim, but would have explained in the court's Order Explaining and Accomplishing Dismissals, doc. 69, the reasons for the dismissal, i.e., there was no valid reason to punish defendant by imposing penalties on defendant, nor was there any legal reason for imposing penalties in favor of Hager on defendant because Hager had not brought to the court's attention in a proper manner that he was making a claim for penalties.

---

[10]Hager admitted in his post-hearing memorandum that his contention that he called this court's attention to his claim for civil penalties under COBRA is based on the inclusion in the Second Amended Joint Pre-Trial Order of the language that is discussed at pages 9-11 of this court's November 20, 2018 order, doc. 86 at 9-11, and is further discussed in another part of this order, supra at 15-17.  In that version of the pretrial order, Hager's counsel put as a contested issue of law "[w]hether the Defendant is liable to Plaintiff for reasonable attorney's fees and statutory penalties under COBRA for failure to notify Plaintiff of the early termination of health insurance plan?"  Doc. 35 at 9, ¶ 12.  As discussed at the places mentioned above in this opinion and in the November 20, 2018 order, that contention was put in the Second Amended Joint Pre-Trial Order by a technique that was contrary to an order the court had issued in response to a motion filed by Hager for leave to amend a pretrial order.  Of interest, that same pretrial order made no mention under the heading "Plaintiff's Pending claims" of any contention by Hager that he had any right to recover penalties because of a failure by defendant to provide Hager notice that the health insurance coverage was being terminated.  Instead, Hager put under that heading its claims of liability by defendant to Hager were for medical expenses and attorney's fees, with no mention of penalties.  Doc. 35 at 4, ¶¶ 15 & 16.  As was true throughout this action before the court dismissed it, Hager's only claim related to the alleged failure of defendant to give notice of termination of the health insurance coverage was that defendant was liable to Hager for compensatory damages in the form of medical expenses he incurred that were not covered by insurance and attorney's fees.

B.  Developments at the January 28, 2019 Trial

Developments at the January 28, 2019 trial of this action provide further support for the court's decision not to award penalties against defendant and in favor of Hager.  Hager demonstrated at trial that he is determined to maximize his claim against defendant, even to the extent of misrepresenting the true extent of his financial loss; and, he failed to provide the court-requested documentation concerning his medical expenses.

1.  Hager's Attempt to Maximize His Claim

Hager testified that he neither inquired nor requested of any of his healthcare providers whether they would accept as satisfaction of his account the amount his insurance company would have paid them if his insurance had been in effect, doc. 120 at 48:1-4; and that he has not been told that the providers would not accept what the insurance company would have paid, id. 45:18-20.  He went so far as to misrepresent the contents of an exhibit that on its face showed that the healthcare provider offered to allow him to pay in satisfaction of his account the amount the insurance company would have paid if the insurance had been in effect.  Pl.'s Ex. 10A at 2.

Early in the trial, when Hager's counsel was questioning Hager, in the course of proving up what Hager claimed his losses were by reason of the cancellation of his health insurance, he

devoted significant time to offering false evidence that he suffered a $785.93 loss by reason of the insurance company's failure to pay Dallas ID Associates, PA, billings for services it rendered to Hager in June 2015. Doc. 120 at 31:13 - 35:11; 36:24 - 44:8. The discussion started with reference to a multiple-page exhibit identified as Plaintiff's Exhibit 10. Id. at 31. At the suggestion of the court, Exhibit 10 was broken down into three different exhibits, Plaintiff's Exhibits 10, 10A, and 10B. Id. at 33-34, 43. Hager testified that Plaintiff's Exhibit 10A is a statement from Dallas ID Associates saying that he owes Dallas ID Associates the amount of $785.93. Id. at 34:20 - 35:3. Someone had handwritten at the bottom of the first page of Exhibit 10A the number $785.93, which was the total of the three charges listed in print above that handwriting. Pl.'s Ex. 10A. The exhibit also showed that the insurance had paid $173.06, $107.38, and $74.54 as its payment obligations on the three charges by the doctors, for a total of $354.98. Id. Page 2 of Exhibit 10A quite clearly states that it is a statement asking Hager to pay only $354.98, which is the dollar amount alongside the words "PAY

THIS AMOUNT" on page 2. <u>Id.</u> at 2. The following is handwritten on page 2 of Exhibit 10A:

> Mr. Hager,
>
> Your BCBS termed 6/1/15. Do you have other insurance? If you DO have new insurance please provide that information so we can bill. If no new insurance please pay the balance due. The contracted rates have been applied as a courtisy [sic].
>
> Billing Dept
> 214-689-7806

Pl.'s Ex. 10A at 2.

When the handwritten note on Exhibit 10A is considered, and the "PAY THIS AMOUNT" entry is taken into account, obviously the $785.93 handwritten total at the bottom of the first page of the exhibit was not put there by the healthcare provider, but, instead, appears to have been put there by someone in Hager's litigation camp. Hager made a point throughout the trial that he was not going to be limited in his attempted recovery by what the insurance company would have paid to the healthcare providers, but that he was going to insist on a recovery of the full amount of the billings of the medical care providers. With specific reference to the Dallas ID Associates charges in the total amount of $785.93, the following exchange occurred between the court and Hager at the trial:

> *THE COURT:* And then below that, it has a June 12 -
> - I'm talking about 10a now -- has a June 12, 2015

entry of $225, and a June 13, 2015 entry of $143, and
then it has, handwritten at the bottom, a total of $795
and -- $785.93.

Why does that differ from the number on
Exhibit 10, which is $417.93?

THE WITNESS: The Exhibit 10 did not -- I did not
have the Blue Cross benefit sheet for the amounts of
June the 12th of $225 or June 13th in the amount of
$143.

THE COURT: You don't have the Blue Cross document
pertaining to those?

THE WITNESS: No, sir.

THE COURT: Has anybody requested that you pay
those?

THE WITNESS: Yes. That's what 10a is, is it's an
invoice directly from the doctors saying that I owe
this amount.

Doc. 120 at 37:6-23.

Put simply, Hager testified falsely when he said that

Exhibit 10A is an invoice directly from the doctors saying that

he owes "this amount" ($785.93). As page 2 of the exhibit

clearly states, he is being billed by the healthcare provider for

only $354.98, and he was told that the doctors were showing him

the courtesy of not asking him to pay any more than the insurance

company would have paid if his policy had been in effect. Rather

than to take advantage of that offer, Hager repeatedly has

informed Dallas ID Associates as well as his other healthcare

providers that he "was pursuing getting them paid, and advised

them of this court action." *Id.* at 38:6-7. Hager's intent to maximize whatever recovery he might make from defendant is clearly disclosed by the following exchange that occurred at the trial:

> *THE COURT:* Okay. Mr. O'Kelly, the amount you gave me earlier as a total amount, I believe you said 45,000-some-odd.
>
> *MR. O'KELLY:* $45,605.49.
>
> *THE COURT:* Is that a total of the Blue Cross Blue Shield obligations for payment, or is that the total bills of the healthcare providers?
>
> *MR. O'KELLY:* That is the total of the bills that the health care -- the health providers, Your Honor.
>
> *THE COURT:* Okay. Well, I think the issue is how much he lost by not having the insurance coverage, and that would be the amount the insurance company would have paid, if it had the coverage.
>
> Is that correct?
>
> *THE WITNESS [HAGER] [interrupting]:* No, sir, that is not correct. The reason the insurance company pays less is because the insurance company has bargained with the provider for a discount. If insurance is not involved, then the patient becomes responsible for 100 percent of the invoice.
>
> *THE COURT:* Have you had any of these health care providers indicate to you they want more than what the insurance company would have paid them?
>
> *THE WITNESS:* Yes, sir, because they are sending me invoices.
>
> *THE COURT:* Who indicated that to you?
>
> *THE WITNESS:* They indicated it because they --

34

*THE COURT:* Who indicated it to you?

*THE WITNESS:* All of the providers, sir.

*THE COURT:* Every provider that's listed on this summary of plaintiff's medical expenses has told you they won't accept from you what the insurance company would have paid?

*THE WITNESS:* They have told me by sending me an invoice for the full amount, yes, sir.

*THE COURT:* Have they told you they would not accept what the insurance company would have paid?

*THE WITNESS:* No.

Id. at 44:9 - 45:20.

Hager failed to admit at trial that at least one of his healthcare providers had informed him that it would be willing to take in full satisfaction of his account what the insurance company would have paid if he had insurance.[11] And Hager made clear that he did not want the healthcare providers to accept in satisfaction of his accounts what they could have received from the insurance company. That that is so is evidenced by the itemization of the medical expenses for which he is seeking payment from defendant shown on Plaintiff's Exhibit 57. It shows

---

[11]In his post-hearing memorandum, Hager makes the statement: "[s]ome of the providers still honored the BCBS contractual prices for Plaintiff and some did not after they were told coverage was not in effect." Doc. 121 at 15. The record references he gave for that statement are "P. Ex. 10, 13-14, 16, 19-20, 22-27." Presumably all of those numbers refer to exhibits. So far as the court can tell, none of those exhibits define what the healthcare providers actually would accept in satisfaction of the services they provided for Hager. He fails to mention Exhibit 10A, which clearly states that all it expects by way of payment from Hager is what the insurance company would have paid.

for Dallas ID Associates that he is seeking payment from defendant of the full charges of Dallas ID Associates for the services they rendered, totaling $785.93, instead of the $354.98 that Dallas ID Associates told him in Exhibit 10A it would accept in full satisfaction of its charges for services it provided him.

Hager continued in his attempts to mislead the court by the statement in his post-hearing memorandum to the following effect:

> Plaintiff's Exhibit 10 contains a statement and handwritten note that Plaintiff received from Dallas ID Associates, PA stating that Plaintiff was personally responsible [for] charges of $785.09 (P. Ex. 10 p. 3,4; TR. 35:1-11).

Doc. 121 at 8. The document he refers to in the quoted language as "Exhibit 10" actually is Exhibit 10A, and his reference to the record of the trial is to his false testimony as follows:

> *Q (BY MR. O'KELLY)* Mr. Hager, turning your attention to what we've now marked Exhibit 10a, which was actually page 3 and 4 of what was formerly marked as Exhibit 10, can you identify this document?
>
> *A.* I can.
>
> *Q.* What is it, please, sir?
>
> *A.* This is an invoice dated October 9th, 2015, from Dallas ID Associates showing that I now owed the three amounts on that sheet totaling $785.93.

Doc. 120 at 34:20 - 35:3.

The foregoing directly contradicts the "PAY THIS AMOUNT," showing $354.98 as the amount to be paid by Hager, and the

handwritten note on the second page of Plaintiff's Exhibit 10A.

Hager even went so far in his post-hearing memorandum to explain

that the handwritten note on page 2 of Exhibit 10A (referred in

the following exchange as Exhibit 10) meant something different

from what it said and that the "PAY THIS AMOUNT" asked him to pay

more than it said. He stated the following:

> Page 3 of Plaintiff's Exhibit 10 shows charges
> totaling $785.93 for services rendered during the
> Services Period. (P. Ex. 10, p. 3-4). On page 4 of this
> exhibit, the Billing Department from Dallas ID
> Associates provided a statement showing amounts
> refunded to BCBS of $173.06, $107.38 and $74.54, with a
> handwritten request to for Plaintiff to pay the
> balance due because "your BCBS termed 6/1/15" ... "The
> contracted rates have been applied as a courtesy."

Doc. 121 at 8-9. Page 3 and 4 of what started out as Plaintiff's

Exhibit 10 ended up becoming Plaintiff's Exhibit 10A. Doc. 120

at 34:20-23.

Those statements in Hager's post-hearing memorandum are so

flagrantly false that this court is urging each member of the

Fifth Circuit panel to review this case in the event of an appeal

to personally study Plaintiff's Exhibit 10A, and note the

handwritten entry of "$785.93" at the bottom of the first page of

the exhibit (which was page 3 of the originally marked

Plaintiff's Exhibit 10) and the entries in the printed part of

the second page of the exhibit (originally page 4 of Plaintiff's

Exhibit 10), which tells Hager that he is to "PAY THIS AMOUNT,"

37

and showing that the amount he is to pay is $354.98. The
handwritten notice on the second page of Plaintiff's Exhibit 10A
could not have been any clearer that the healthcare providers
were giving Hager benefit of its contracted rates with the
insurance company when it explained why the amount he was to pay
was limited to what the insurance company had paid, but had
required repayment, when it said in the handwritten part "[if] no
new insurance please pay the balance due. The contracted rates
have been applied as a courtisy [sic]." Pl.'s Ex. 10A at 2.

The court has no reason to believe that other of the
healthcare providers would not have accepted, and still accept,
the amount the insurance companies would have paid for their
services in full satisfaction of their charges for those services
if Hager had simply requested of the healthcare providers that
they accept such a payment. His decision not to make such a
request of any of his healthcare providers and his
misrepresentations related to the contents of Plaintiff's Exhibit
10A are factors, though not overriding factors, that the court
considers appropriate to take into account, and has taken into
account, on the decision not to award the amount of Hager's
medical expense charges as a penalty.

Based on the information the court received through Hager's
presentation at trial, the court has calculated that, on average,

the health care providers whose billings for services rendered to Hager have not been paid, would have been paid approximately forty-seven percent of the charges presented to the insurance company by the providers, which means that if the total amount proved, $41,972.29,[12] as the amount submitted by the providers to the insurance company for payment, the insurance company, using the average, would have paid a total of $19,726.97. If the court were to award the cost of healthcare as penalties to Hager, it would be limited to that amount. Even then, the court would have a concern that such an award would be in excess of the amounts Hager would actually pay to the healthcare providers, bearing in mind that the statute of limitations arguably has barred most of the claims. Tex. Civ. Prac. & Rem. Code §§ 16.004 & 16.051.

---

[12]The court's calculations are based on what it determined from the record of what Hager proved by testimony and documentation as to the healthcare provider charges and what the insurance company paid based on claims resulting from those charges. The court's calculations show that the total charges by the healthcare providers was $41,972.29 and that the insurance company paid in response to claims for those charges $19,726.97. Hager's summary shows a total of charges of $45,605.49. Pl.'s Ex. 57. The court concludes from its study of the record that Hager's summary incorrectly includes a $2,762.00 amount in the Texas Oncology total that duplicates a charge for that amount that is included in an earlier billing, and incorrectly includes a $1,556 charge by Grapevine Emergency that was not proved by testimony or document at trial. Id. The totals of the court's calculations could be slightly incorrect, but the court is comfortable in finding that forty-seven percent is a fair approximation of the percentage of healthcare charges that the insurance paid.

2.  <u>Failure of Hager to Comply with a Court Order re</u>
    <u>Producing Documents for the Court's Inspection in</u>
    <u>Advance of the Trial or at the Trial</u>

In the order initially scheduling the post-appeal trial, the

court included the following directive to Hager:

> There are certain matters that the court
> anticipates now could be important to the decisions the
> court will be called upon to make after having had the
> hearing, and the court expects cooperation of the
> parties and counsel in causing information and material
> pertaining to those matters to be presented to the
> court in advance of the hearing and in causing persons
> who can give testimony in respect to such matters to be
> present at the hearing for that purpose.  Those things
> are:

>> (1)  . . . .  The court is requiring
>> plaintiff to provide to the court as
>> attachments to an appropriate pleading
>> to be filed by plaintiff in this action
>> by 4:00 p.m. on November 15, 2018, <u>all</u>
>> <u>documents of any kind or character</u>,
>> including printouts of any documents
>> stored in computers, <u>pertaining to any</u>
>> <u>of the medical expenses plaintiff</u>
>> <u>incurred after the healthcare plan was</u>
>> <u>terminated and before he became aware</u>
>> <u>that it was terminated, including all</u>
>> <u>medical expenses for which plaintiff has</u>
>> <u>sought recovery as damages in this</u>
>> <u>action</u>.  The documents plaintiff is to
>> provide as attachments to such pleading
>> pursuant to this directive are all
>> communications between him and the
>> insurance company related to any of such
>> expenses. . . .

Doc. 82 at 3-6 (emphasis added).

Hager provided certain documents to the court for review in

advance of the trial, but the court repeatedly learned during the

trial that Hager had failed to comply with the order. Some of the withheld items could have had a significant impact on the effect of Hager's evidence relative to his medical expense payment obligations. While the court might have overlooked some of those occasions, the court has located the following in the transcript of the trial:

1.    Hager testified that he had received an invoice about two weeks ago from Dallas ID Associates. Doc. 120 at 38:13-18. When the court made known its wish to see that invoice, the following exchange occurred:

> *THE COURT:* I had ordered you to produce all of those things.
>
> *MR. O'KELLY:* And I have forwarded your order to the witness, and we gathered as much as we can. I will look at the break for that document. The witness may have it, and if he does, we'll be happy to make it available, but –
>
> *THE COURT:* Well, do you have a copy of what you say –
>
> *THE WITNESS:* Yes, I believe I do. It's one that I received two weeks ago.
>
> *THE COURT:* Well, Mr. O'Kelly, I expected you to comply with the order when I ordered those things produced, and if new ones came into existence, that they be produced.

Id. at 39:6-16.

Hager further described the document under discussion, by saying:

> THE COURT: Did you receive a document similar to plaintiffs Exhibit 10 pertaining to the $225 charge and the $143 charge on Exhibit 10a?
>
> THE WITNESS: Your Honor, the document that I received had all of the three charges as reflected on Exhibit 10a.
>
> THE COURT: Did you receive from Blue Cross Blue Shield anything pertaining to the $225 and $143 charges?
>
> THE WITNESS: I'm sure that I did, but I could not find them readily -- I could not _readily_ find them.

Id. at 39:23 - 40:1-7 (emphasis added).

Considering the discrepancies in the contents of Exhibit 10A and the witness's testimony and post-trial memorandum concerning that exhibit, the additional documentation could have been important. It was never produced during the trial.

2.   Hager discussed a letter he sent to a collection agency telling it that he would only deal directly with North Texas Kidney Disease Associates, but that he did not have that communication with him because it would be at his home.  Id. at 69-70.

3.   Discussions relative to a Texas Oncology billing that was not produced.  Id. at 77-78.  The following

exchange occurred in reference to the non-production of those documents:

> THE COURT: Do you know if that healthcare provider, Texas Oncology, submitted to Blue Cross Blue Shield for payment what you've included in your exhibit list as the $12,566 charge? Was that ever submitted by Texas Oncology to Blue Cross Blue Shield?

> THE WITNESS: Yes, Your Honor.

> THE COURT: Is that reflected in Exhibit 25?

> THE WITNESS: I don't see it in there.

> THE COURT: Is that somewhere in the exhibits, Mr. O'Kelly?

> MR. O'KELLY: No, Your Honor, it is not.

> THE COURT: Why is it not in there?

> MR. O'KELLY: I don't have it to put in. I didn't receive it from the client, and I don't believe I got anything from Texas Oncology either.

> THE COURT: Do you have anything on that subject?

> THE WITNESS: I'm sure that I do.

> THE COURT: Do you have it with you in that folder?

> THE WITNESS: No, sir.

> THE COURT: Well, is there a reason why your attorney doesn't have it?

> THE WITNESS: I provided my attorney with final invoices and not necessarily the initial billing from the provider to the

insurance company, and the subsequent refund
of those monies that was paid back from the
provider to Blue Cross, but I'm sure that I
have them. I have a stack of papers that are
very high.

*THE COURT:* Mr. O'Kelly, I have signed an
order requiring all those things to be produced.

*MR. O'KELLY:* Your Honor, I've done what I can
to comply with that order. I don't know what I
have not received to provide to --

*THE COURT:* Well, he says he has those
documents.

*MR. O'KELLY:* Well, then I'm afraid there may
have been a miscommunication between me and the
client, but there was never an attempt to avoid
the requirements of your order.

*THE COURT:* Okay. Some of those documents
could be relevant to what we're doing, but we'll
have to move on if they are not here.

Id. at 76:23 - 78:11.

4.   Another example of the failure of the witness and

his attorney to comply with the order requiring that

documents be turned over to the court in advance of trial is

found at pages 92-93 of the trial transcript, where the

following exchanges occurred:

*Q (BY MR. O'KELLY)* Mr. Hager, let me ask you
sort of a general question. Did you notify these
providers that you were in litigation over these
costs?

*A.* I notified every one of the providers that
I was in litigation and that my intent was to get
them paid for saving my life.

44

*Q.* As a result of that communication, have you received -- or following that communication, have you received any further demands for payment?

*A.* No. I've kept them up to date with every step of this process.

*THE COURT:* How did you communicate what you've just described –

*THE WITNESS:* In --

*THE COURT:* Let me finish my question. To the healthcare providers. How did you communicate that to the healthcare providers?

*THE WITNESS:* In written correspondence, Your Honor.

*THE COURT:* Okay. Let me see that correspondence, Mr. O'Kelly.

*MR. O'KELLY:* I do not have that. I have not been presented that.

*THE COURT:* That's exactly what I had asked for in an order.

*MR. O'KELLY:* That's correct, Your Honor. I do not have that correspondence.

*THE COURT:* Do you have it with you?

*THE WITNESS:* No, sir, I have it at home.

Id. at 92:5 - 93:7 (emphasis added).

Interestingly, the very series of correspondence to which the exchanges quoted above refers was thought by Hager and his attorney to be significant enough to be referenced in their post-hearing memorandum in support of Hager's

45

arguments that he should receive a significant penalty award. On page 8 of that memorandum, Hager and his attorney made the following statements:

> Approximately two weeks prior to the hearing, Plaintiff contacted his providers and told them that he was pursuing the instant action in order to get them paid. Plaintiff has consistently kept his providers informed about the pending lawsuit, as his desire to pay the providers that saved his life. (TR 38:5-7; 102:8-13)

Doc. 121 at 8. Yet, they intentionally ignored an order of the court relative to those very documents.

5. A similar-type exchange occurred at a later point in the hearing. The record reflects as to that exchange the following:

> *THE COURT:* Did you ever receive a bill from Radiology Associates for any amount?
>
> *THE WITNESS:* Yes.
>
> *THE COURT:* When did you receive that?
>
> *THE WITNESS:* I would have to go through my records, Your Honor.
>
> *THE COURT:* Do you have it with you?
>
> *THE WITNESS:* No, it would be at home.
>
> *THE COURT:* Do you have that, Mr. O'Kelly?
>
> *MR. O'KELLY:* I do not, Your Honor.

Doc. 120 at 103:15-24 (emphasis added).

* * * * *

Without seeing the withheld documents the court had directed Hager and his attorney to provide to the court, there is no way the court can evaluate the extent to which those documents could have provided evidence that would bear further on Hager's effort to maximize his damages. They could well disclose that other healthcare providers expressed, one way or another, a willingness to accept less than the billed amounts in satisfaction of the original charges for the services they rendered for Hager. Considering the misrepresentations that Hager and his attorney have made relative to the contents of Plaintiff's Exhibit 10A, there is certainly reason to suspect that Hager would have withheld from his compliance with the court's order all other documents that disclosed similar information relative to his relationship with other healthcare providers.

VI.

## The Court is Denying an Award of Penalties

Be all that as it may, for the reasons discussed above and under this heading, the court has concluded that it should exercise its discretion to deny Hager an award of any amount as a penalty against defendant related to any failure on the part of defendant to provide Hager notice of its intent to terminate the health insurance plan that resulted in termination of Hager's

continuation of coverage obtained through COBRA. Not only is there no evidence that defendant engaged in any bad-faith conduct related to the notice-of-termination issue, there certainly is no evidence that defendant intentionally failed to provide notice. The evidence suggests that defendant took steps to see that the notice was provided, but for an unexplained reason apparently failed to accomplish what it intended to accomplish.

Moreover, the court was disadvantaged when it decided to dismiss Hager's COBRA claims because it had never been informed in a proper manner by Hager that Hager was seeking penalties related to his claim of lack of notification of termination of the healthcare plan. Instead, Hager said the court correctly defined the issues to be decided even though the defined issues did not include a penalty issue. Supra at 6-7. Perhaps the court, through its own research, could and should have figured out that if Hager and his attorney were alert to Hager's rights, he would have been making a claim for penalties. However, what the court decisions that do not require a district court to make a ruling on a claim unless the claim is clearly brought to the attention of the court by the litigant, supra at 11 n.5, appear to have in mind is that: When, as occurred in this case, pressing judicial business of the court prevents the court from conducting the independent research it normally would conduct,

but, instead, requires it to rely on the litigant to properly define for the court the exact nature and extent of the litigant's claims, the district court has no obligation to consider in its decision a claim that is not clearly brought to the court's attention. If this court had been given proper notice that such a claim had been made, the court probably would have dismissed it in any event, but would have provided an adequate explanation for having done so, including the court's conclusion that the record did not provide any reason for imposing punishment by way of penalties on defendant. Had the court given an explanation as to why it was dismissing a penalties claim, there is a possibility, indeed the prospect, that the Fifth Circuit would have accepted the explanation, and there would have been no reversal and remand.

Not only was there no evidence that defendant engaged in bad-faith conduct, there certainly was no evidence that any failure on its part to give notice of the termination was intentional. The conduct of Hager and his counsel described in section V.B. above, while not decisive, has been taken into account by the court in the exercise of the court's discretion to deny an award of penalties against defendant. Interestingly, there is no evidence that Hager has paid a single penny on any of the medical expenses he incurred in June or July 2015, nor does

the court have any confidence that he would use any recovery by way of penalties awarded in this action to make payment to his healthcare providers. Also absent from the record is any evidence that, if Hager had received timely notice, he would have been able to obtain replacement health insurance, bearing in mind that his treatment for cancer commenced in April 2015. Doc. 120 at 26:11-15. Perhaps the Affordable Care Act would cause insurance to be available to treat a preexisting condition such as Hager's cancer, but nothing in the record would support such a conclusion. While certain of the factors the court has taken into account in the exercise of its discretion to deny Hager an award of penalties would not, standing alone, cause the court to rule as it is, the combination of those factors causes the court to be satisfied that its ruling is the correct and proper one.

## VII.

### The Court is Denying an Award of Attorney's Fees

The court turns now to the question of whether Hager should recover attorney's fees for the work done by his attorneys on his behalf in the prosecution of this action. For the reasons stated below, the court has concluded that Hager should be denied any recovery of attorney's fees.

The Fifth Circuit has suggested that the district court consider the following five factors in its analysis of whether

the court should award a plaintiff recovery of attorney's fees

for work on a COBRA claim:

> (1) the degree of the opposing parties'
> culpability or bad faith;

> (2) the ability of the opposing parties to
> satisfy an award of attorneys' fees;

> (3) whether an award of attorneys' fees against
> the opposing party would deter other persons acting
> under similar circumstances;

> (4) whether the parties requesting attorneys'
> fees sought to benefit all participants and
> beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA itself; and

> (5) the relative merits of the parties'
> positions.

Miles-Hickman v. David Powers Homes, Inc., 589 F. Supp. 2d 849,

882 (S.D. Tex. 2008)(citations omitted).

In Miles-Hickman, the Court added, again relying on Fifth

Circuit authority, that:

> No one of these factors is necessarily decisive, and
> some may not be apropos in a given case, but together
> they are the nuclei of concerns that a court should
> address in applying § 1132(g).

Id. (citation omitted).

Considering each of those factors:

(1) The court has found that defendant did not act in

bad faith on the subject of notice of termination of health

insurance, which is the only claim that has survived this

court's dismissal and the rulings of the Fifth Circuit. While defendant could arguably have used more care in being certain that notice of termination of insurance reached Hager, the court does not consider that that level of culpability is sufficient to justify an award of attorney's fees to Hager against defendant.

(2)  The court is unable to find in the record anything that would support a finding in favor of Hager on the ability of defendant to satisfy an award of attorney's fees. Bearing in mind that Hager had the obligation to establish its entitlement to attorney's fees, the absence of evidence on this subject weighs against an award of attorney's fees.

(3)  The court is not persuaded that deterrence would result from an award of attorney's fees against defendant here, bearing in mind the court's findings that defendant did nothing intentionally to prevent Hager from having notification that insurance coverage was terminated, and that defendant acted in good faith on the notice-of-termination-of-insurance issue.

(4)  The fourth factor is a nonissue in this case because notice _vel non_ to Hager of termination of insurance does not bear on any benefit of any other participant or beneficiary of defendant's ERISA plan, nor does the outcome

of this case resolve a significant legal question regarding ERISA itself.

(5)  As to the fifth factor, the court concludes that, for all of the reasons why the court is denying a penalty award to Hager, Hager's position is without merit but that defendant's position has merit.

The court also adds factors not mentioned above that appear to be pertinent to the request for recovery of attorney's fees in this action.

The first-added factor pertains to the quality of the legal representation provided by Hager's attorneys in this action.  For the reasons given above, the legal representation provided to Hager was such that this court did not know at the time this court dismissed all of Hager's COBRA claims that Hager was making the only COBRA claim as to which he was successful on his appeal to the Fifth Circuit.  As a consequence, significant time has been wasted by the court and unnecessarily devoted to the defense of this action by defendant and its attorney.

The second is the lack of candor of Hager, personally or through his attorney, to the court.  Supra at 28-47 (§ V.A. & B.).

Having considered the pertinent factors, the court concludes to exercise its discretion to deny Hager recovery of any attorney's fees from defendant.

## VIII.

### The Court Is Denying an Award of Costs of Court to Hager

Consistent with the requirements of Rule 54(d)(1) of the Federal Rules of Civil Procedure, the court is denying Hager, as the non-prevailing party, recovery of costs of court.

## IX.

### Order

Therefore,

The court ORDERS that Hager be, and is hereby, denied any recovery from defendant based on (1) any claim for penalties for defendant's failure to notify Hager of termination of the Hager's health insurance coverage, (2) Hager's claim for recovery of attorney's fees against defendant, and (3) Hager's request that he recover his costs of court; and,

The court further ORDERS that all claims and causes of action asserted by Hager against defendant that remain pending at this time be, and are hereby, dismissed.

SIGNED August 1, 2019.

JOHN McBRYDE
United States District Judge